**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

September 14, 2022

**VIA ECF & EMAIL**
Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

Re: **United States v. Amadou Sangaray**
    **22. Cr. 387 (KPF)**

Dear Judge Failla:

    I write on behalf of Amadou Sangaray to respectfully request that the Court terminate his supervised release early, based on his good conduct, successful reintegration in the community, and compliance with making restitution payments. Mr. Sangaray, who lives in New York but was convicted of a nonviolent offense in the District of Minnesota, has now completed 27 of his 36 months of supervision. He seeks early termination so that he may travel more regularly to visit family outside of New York, including to spend time with elderly, unwell relatives abroad. Based on the factors set out in 18 U.S.C. §§ 3553(a) & 3583(e)(1), as well as the criteria for early termination set out by the Department of Probation, early termination is warranted here. **I have conferred with U.S. Probation Officer Sonales Gonzalez and AUSA Justin Rodriguez, who inform me that the Department of Probation and the Government, respectively, have no objection to this request**.

A.     **Background**

    Amadou Sangaray was born in Liberia in 1980. When he was 14 years-old, his family fled Liberia during that country's first civil war and resettled as refugees in Guinea. Around 2003, Mr. Sangaray and his family traveled to Dallas, Texas, where they were granted asylum. Mr. Sangaray later moved to New York City, where he began working as a taxi driver. While living in New York, he married his long-term partner, Kadiatou Dioubate, who also emigrated from Guinea and with whom he still lives in the Bronx. Mr. Sangaray's mother, stepfather, and siblings continue to reside to reside in Dallas, while his extended family remains in Guinea.

Honorable Katherine Polk Failla                                                                            Page 2
September 14, 2022

      In 2013, Mr. Sangaray was arrested and charged in the District of Minnesota for his role in a fraudulent tax preparation scheme. He had no prior criminal record. He was released pending trial under the supervision of Pretrial Services in New York. At trial, the Government asserted that one of Mr. Sangaray's codefendants led the scheme. *See* Gov't's Trial Brief, 13-cr-0057 (JRT) (KMM) Dkt. No. 223 at 11 (D. Minn. Jul. 31, 2015) ("Both Robinson and Mwangi will testify that Khofi was at the head of the scheme."). Mr. Sangaray and his codefendants were convicted of conspiracy, abetting aggravated identity theft, and filing false income tax returns. *See* **Exhibit A** (Amended Judgement). On April 13, 2016, Mr. Sangaray was sentenced to 50 months of incarceration followed by three years of supervised released. He and his codefendants were jointly ordered to pay approximately $239,600 in restitution. *Id*.

      Mr. Sangaray served his prison sentence at minimum-security camps at FCI Texarkana, near Dallas, and FCI Fort Dix in New Jersey. While in prison, Mr. Sangaray completed numerous programs, including courses in Biomechanics, Nutrition, Air Conditioning and Refrigeration, and safe equipment handling, in addition to completing the Victim Impact Program and a course on credit repair. *See* **Exhibit B** (Collected Certificates). On June 24, 2020, Mr. Sangaray completed his prison sentence and began his sentence of supervised release. Though he was supervised out of the District of Minnesota, he was permitted to return to New York to live with his wife in the Bronx.

      In July 2022, Mr. Sangaray's supervision was transferred to the Southern District of New York and assigned to this Court. *See* **Exhibit C** (Order Transferring Jurisdiction.) Per the transfer order, this Court now has sole discretion to modify the term of Mr. Sangaray's supervision. *See id.* ("This Court hereby expressly consents that the period of supervision may be changed by the District Court to which this transfer is made without further inquiry of this Court.") Mr. Sangaray's supervision is scheduled to end June 23, 2023. *Id*.

B.      **Legal Standard**

      After considering the relevant factors in 18 U.S.C. § 3553(a), a court may terminate supervised release after one year of supervision "if it is satisfied that such action is warranted by the conduct of the defendant released and the interests of justice." 18 U.S.C. § 3583(e)(1).

      Courts in this district have often relied on dicta in *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997), to limit termination to instances where there are "changed circumstances – for instance, exceptionally good behavior by the defendant." However, as the Second Circuit has explained, *Lussier* does not require

changed circumstances. *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). Rather, it "simply recognizes that changed circumstances *may* in some instances justify a modification." *Id.* (emphasis added).

Indeed, the Circuit has made clear that "[s]o long as the court, when modifying supervised release conditions, considers the relevant 18 U.S.C. § 3553(a) sentencing factors, there is no additional requirement that it make a finding of new or changed circumstances with respect to the defendant." *Id.* Courts in this District have further emphasized that "[s]upervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation.'" *United States v. Bethea*, 2015 WL 13776431, at *1 (S.D.N.Y. Dec. 7, 2015) (quoting *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015)) (termination after 36 months of 60-month term; conviction for conspiracy to possess with intent to distribute crack, §§ 841(a)(1), 841(b)(1)(A) and 846). That is, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000).

This District's Probation Office has thus encouraged courts to take a more expansive approach to early termination, providing a non-exhaustive list of criteria for consideration that includes the length of time a person has been under supervision, whether he has successfully reintegrated into the community, whether he has made progressive strides towards the objectives of supervision, his role in the offense of conviction, a lack of violence or further criminal conduct, and a lack of substance abuse of psychiatric concerns. *See* **Exhibit D** (Memorandum Re. Early Termination from Probation and Supervised Release dated Mar. 5, 2018). Notably, Probation explains that the "existence of an outstanding financial penalty, per se does not adversely affect early termination eligibility as long as the releasee has been paying in accordance with the payment plan." *Id.* at 5.

### C.　No Further Supervision is Warranted Here

Mr. Sangaray has now served 27 of his 36 months of supervised release. Since his release from prison in June 2020, he has fully complied with the conditions of his supervision, incurred no new arrests, and made regular restitution payments. He has reintegrated with his community here in New York, continuing to live with his wife in the Bronx and work as a taxi driver. He has also made efforts to obtain more gainful employment, though he has lost job opportunities at the Sullivan Street Bakery in Manhattan and the Amazon Fulfillment Center in Staten Island, as well as as a long-distance taxi driver, due to his status as a federal supervisee. Mr. Sangaray thus seeks early termination in part in order to broaden his employment prospects.

  Mr. Sangaray's primary reason for seeking early termination, however, is so that he may take an extended trip to Guinea to spend time with family who are in poor health. Specifically, Mr. Sangaray's grandmother, who is 77 years-old, suffers from high blood pressure and lost her vision three years ago. His grandfather, who is 81 years-old, suffers from diabetes, which resulted in amputation of his right leg two years ago. Mr. Sangaray is very close to both his grandparents, with whom he grew up in Liberia and Guinea and who he used to periodically visit prior to his conviction. As they are now elderly and in declining health, he would like to visit them, and other relatives in Guinea, as soon as possible. The journey to West Africa is long and expensive, therefore, Mr. Sangaray hopes to spend several months in Guinea, which is why he seeks early termination in lieu of travel permission.

  In addition, Mr. Sangaray wishes to more frequently visit his parents and siblings in Dallas. Though he was previously granted permission to travel to Dallas following the death of a family friend, Mr. Sangaray seeks early termination so that he may more regularly leave New York to visit them.

  The factors set out in 18 U.S.C. § 3553(a) weigh in favor of early termination. Mr. Sangaray has no criminal record outside of the convictions leading to his current supervision. His offense, though troubling, was nonviolent, and his role non-aggravating. Moreover, Mr. Sangaray has been substantially punished for his conduct, serving 50 months in federal prison, during which time he sought to make the most of incarceration by partaking in programming. Since his release, he has fully complied with supervision and made his restitution payments. In sum, incarceration and supervision have already accomplished the objective of rehabilitation and a further nine months of supervision would yield no marginal benefit.

  Similarly, Mr. Sangaray satisfies the criteria set forth in the Department of Probation's memorandum regarding early termination. He has now served well over half his period of supervised release, a total of 27 of 36 months, without incident. He presents no history of violence, substance abuse, or psychiatric concerns. He has led a law-abiding life, working full-time, reintegrating in his community in the Bronx, and regularly making payments toward his financial obligation. For all these reasons, he warrants early termination. As noted above, neither the Department of Probation nor the Government object to this request.

Honorable Katherine Polk Failla                                                    Page 5
September 14, 2022

Thank you for your consideration of this request.

                                                         Respectfully submitted,

                                                         /s/
                                                         Hannah McCrea
                                                         Assistant Federal Defender
                                                         (646) 574-0351

cc:     USPO Sonales Gonzalez
        AUSA Justin Rodriguez